393 P.2d 254

Adelina Ruelas ALMADA, Eva Ruelas Robles, Frances Ruelas Tellez and Armida Ruelas Klohe, Appellants,

v.

Matilde RUELAS, Feliz Ruelas, Placido Ruelas, David Ruelas, Victoria Quijada and Carlos Robles, as Executor of the Estate of Cleofe Ruelas, deceased, Appellees.

No. 7155.

Supreme Court of Arizona,

En Banc.

June 10, 1964.

Rehearing Denied July 7, 1964.

Lyle R. Allen, Bisbee, and Harlan Heilman, Tucson, for appellants.

Cusick, Watkins, Frey & Odgers, and Odin B. Dodd, Tucson, for appellees.

JENNINGS, Justice.

Appellants were plaintiffs in a suit to impress a constructive trust on and for an accounting of property left by will by their mother. Defendants-appellees are the other children and the executor of the mother's estate.

The mother's will provided that plaintiffs Frances and Armida each receive one dollar ($1.00); plaintiffs Adelina and Eva each received five hundred dollars ($500.00); defendant Matilde received a house, automobile, household furnishings and jewelry; and defendants David, Victoria and Matilde receive equal shares in the residue of the estate. Placido and Feliz, Jr. had each been given an undivided one-third interest in land here involved by deed in 1956 and did not share in the will. All plaintiffs had been given numerous gifts by their mother during her life. The mother died in 1958. The mother's will was filed for probate, was contested by these plaintiffs and their contest was dismissed with prejudice. The dismissal was not appealed.

Plaintiffs argue they are entitled to share equally in the estate for the following reasons: Feliz Ruelas died intestate in Tucson, Arizona on October 26, 1930, leaving as survivors his wife, Cleofe, and their nine children Feliz, Jr., Eva, Victoria, Armida, Adelina, David, Placido, Matilde and Frances. Cleofe was appointed administratrix of the estate which consisted, for the most part, of a ranch property located in Pima County. Adelina, Frances, Eva, Victoria, and Feliz Ruelas, Jr., signed a "release of Interest" which was filed in the probate proceeding on January 16, 1932. This instrument recites:

"That by these premises, for and in consideration of the sum of $1.00 and other consideration, and whereas Cleofe Ruelas, administratrix in the above entitled Matter, has paid the debts and expenses of the estate out of her own money, we now do hereby release and *convey* unto her, all our interest, share and title to any share or interest in the said estate of our father Feliz Ruelas, deceased, and any interest or contingencies that may accrue to us by reason thereof." (Emphasis supplied.)

On June 29, 1932, a decree of distribution was entered in Feliz' estate. It recited that Victoria and Feliz, Jr., and plaintiffs Adelina, Eva and Frances were entitled to one-ninth undivided share of the estate but that:

"* * * whereas by their deed they conveyed, released and sold their respective interest thereof to the said Cleofe Ruelas, now therefore, their respective share and interest is affirmed and conveyed unto the said Cleofe Ruelas forever."

In addition, the decree distributed an undivided one-half interest in the property to Cleofe and distributed an undivided one-ninth share of the estate to David, Placido, Matilde and plaintiff Armida.

In 1938, plaintiff Armida, then seventeen years old, married and left the family home. She executed a quitclaim deed to her mother just before she was married. The mother opposed the marriage but there is no proof that the deed was procured by duress.

Plaintiffs contend that Cleofe induced her children to consent that the property of Feliz' estate should be managed by her until it could be sold; that the releases and deeds were procured by Cleofe by representing they were needed to facilitate the sale of the property; that appellants had confidence in their mother and relied on this confidence in her when they signed the release and conveyance and the deed; that in 1951 appellants first learned that Cleofe claimed the property as her sole property and that she did not recognize their rights; that Frances and Armida commenced an action in 1953 and dismissed the action in reliance on Cleofe's promise to recognize

their rights to their shares, to hold the property in trust, to divide the proceeds of a sale, and to arrange that each would receive her share.

At the outset we are confronted with the question of the capacity of the plaintiffs to release and convey their interest in the father's estate and the additional question as to whether any of the plaintiffs may raise the question of lack of capacity at this time.

■ At the time the original release and conveyance was signed in 1932 plaintiffs Eva and Adelina were over twenty-one years old and had the legal capacity to convey. Frances was seventeen years old in 1932 and did not reach her majority until 1936. But at no time has she taken any action to renounce the release and conveyance unless the 1953 action, in which Frances and Armida filed suit to force their mother to give them a share of the mother's estate, can be considered as such a renunciation. Thus, at best, Frances did not renounce the release and conveyance until seventeen years after she had reached her majority. Where a minor has executed a conveyance and wishes to avoid its effect he must renounce the instrument "within a reasonable time" after reaching his majority. Smith v. Williams, 141 S.C. 265, 139 S.E. 625, 54 A.L.R. 964. A seventeen year wait can not be said to fall within the above-quoted language and the release and conveyance is as binding on Frances as it is on Eva and Adelina.

Armida executed a quitclaim deed to her mother in 1938 when she was seventeen years old. She was married the day after she executed the quitclaim deed. As with Frances she made no move to renounce this deed from 1938 to, at the earliest, 1953, a period of fifteen years. Armida's failure to act within a reasonable time puts her in the same position as Frances and the deed is as binding on her as is the release and conveyance of the other plaintiffs.

■ But plaintiffs claim that the conveyances are not valid because a confidential relationship existed as a matter of law, because of the family relationship of the parties. They claim the release and conveyance was given on the confidence of the relationship and that, considering the mother's position as head of the household, this alone is sufficient to create a constructive trust.

The trial judge found the following facts:

"2. The plaintiffs did not execute exhibit B [The release and conveyance] because of the fiduciary relationship between them and their mother *or because of any promise made to them by their mother and the mother did not make any identifiable promise to them in order to entice them to execute exhibit B* and they would have executed

said exhibit irrespective of whether the mother had made any promise to them." (Emphasis supplied.)

This disposes of the contention of Adelina, Frances and Eva. Armida did not testify at the trial and there is no direct testimony of any promise made by the mother to induce her to sign the quitclaim deed. There is direct testimony of the mother introduced from the 1953 trial that she made no promise to Armida to induce her to sign the deed.

■ This court will view the evidence and the lawful inferences to be drawn from the evidence in the light most favorable to supporting the findings of the trial judge, Smith v. Connor, 87 Ariz. 6, 347 P.2d 568 (1959). We have also held that where a trial judge does not make a specific finding of fact necessary to the determination of the case, such a finding will be presumed by this court if it appears from the evidence when viewed in the appropriate light, Colvin v. Superior Equipment, 96 Ariz. 113, 392 P.2d 778.

■ We are of the opinion that the evidence permits the finding and conclusion of the trial judge that there was no promise on the part of the mother to reconvey the property to the plaintiffs.

This Court has held that the existence of a family relationship without more is not sufficient to create a constructive trust. In Murillo v. Hernandez, 79 Ariz. 1, 7, 281 P.2d 786, 789, 790, we said:

"* * * when a confidential relationship is shown to exist between two parties, even though no active fraud by the grantee in the procuring of a conveyance be shown, the mere existence of such confidential relation, *when coupled with a promise to reconvey*, creates a constructive trust." (Emphasis supplied.)

And in Smith v. Connor, supra, we said:

"We are satisfied that in order to impose a constructive trust in cases where the parties are related by blood or marriage, the trial court must be persuaded by clear and convincing evidence that a confidential relationship existed at the time of the transfer *and that the transferor conveyed the property on the strength of the relationship to the transferee.*" 87 Ariz. 6, 17, 347 P.2d 568, 576. (Emphasis supplied.)

The trial judge found that the transfers made in 1932 were not made on the strength of the relationship of the plaintiffs to their mother and that no promise had been made to reconvey the property. As to the 1938 transfer plaintiff Armida did not testify and the testimony in the record supports the trial judge's ruling.

"* * * Our duty, on appeal, begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might

reasonably have reached the same conclusion which was reached." Murillo v. Hernandez, supra, quoted in Smith v. Connor, supra, 87 Ariz. 6, 10, 347 P.2d 568, 570.

In view of our disposition of this case it is not necessary to discuss appellants' other contentions as they concern transactions subsequent to the controlling transactions here involved.

Affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.