401 P.2d 242

**David B. GRAHAM and E. A. Thomasson d/b/a Thomasson Agricultural Dusting Service, Appellants,**

**v.**

**VEGETABLE OIL PRODUCTS COMPANY, a corporation, Jennings Cotton Company, a corporation, Appellees.**

**2 CA–CIV 36.**

Court of Appeals of Arizona.

April 28, 1965.

Rehearing Denied June 9, 1965.

Review Denied July 6, 1965.

Donald C. Cox, Eloy, for appellants.

Evans, Kitchel & Jenckes, by Stephen W. Pogson, Phoenix, for appellees.

HATHAWAY, Judge.

Appellants Graham and Thomasson respectively owned and operated a well-drilling business and an aerial application business. Appellee Jennings Cotton Co., hereinafter referred to as Jennings, was a corporation engaged in the business of crop financing and cotton ginning. Appellee Vegetable Oil Products Co., hereinafter referred to as Veg-Oil, was a corporation engaged in the business of processing cotton seed. At the time this lawsuit arose, Jen-

nings was operating under the name of Stanfield Y-D Gin, a corporation in which Veg-Oil, through a subsidiary, owned a substantial interest.

Early in 1958, Jennings entered into an agreement with the Bank of Douglas and Veg-Oil which provided that the bank would make loans for the purpose of financing the crops of various farmers. Farmers would submit loan applications accompanied by prospective budgets to Stanfield Y-D Gin. Procurement of a loan required the approval of Jennings and Veg-Oil. When an application was approved, Jennings would make funds available to the applicant in accordance with the budget provisions and in return the farmer-applicant would execute a promissory note and a crop and chattel mortgage. Jennings thereupon would pledge the aforesaid note and mortgage to the bank as security for the bank loan to Jennings. Veg-Oil guaranteed payment if the primary obligor, Jennings, defaulted.

In 1958, two cotton farmers, Siminoff and McTarnahan, applied to Stanfield Y-D Gin for a loan, the necessary approval was obtained, and a loan of $358,000 was granted. Subsequently, Siminoff and McTarnahan assigned all their farm interests to Y-F Ranches, a corporation in which they were the majority stockholders, and all farming operations were conducted by the corporation.

Prior to August 18, 1958, at the request of Y-F Ranches' agents, the appellants performed services for Y-F Ranches, namely, well-drilling and crop-dusting. Y-F Ranches was billed for the services, but on August 18 a large portion of the sums allegedly due to appellants had not been paid. On the evening of August 18, appellants met one Webb, a managerial employee of Veg-Oil, in the bar of the Adams Hotel. Appellants and Webb, along with several other individuals, engaged in a discussion of various and sundry matters, including the financial situation of Y-F Ranches. The pertinent details of this conversation relative to Y-F Ranches will be discussed in our consideration of the questions presented by this

**240**

appeal. Subsequent to the aforementioned conversation, appellants rendered additional services to Y-F Ranches for which they received no compensation.

On June 13, 1960, appellants filed separate civil actions against appellees seeking to recover damages for alleged breach of contract. Appellees' responsive pleading denied the existence of a contract and in addition, set forth the affirmative defense of the Statute of Frauds. The same issues being involved in both cases, they were consolidated and tried by the court sitting without a jury. No requests for findings of fact and conclusions of law were made. Judgment was entered for the appellees and appellants' assignments of error, in substance, present the following questions:

1. Was there a contract between appellants and appellees?

2. Is the Statute of Frauds available to appellees as a defense?

3. Did the court err in denying appellant Graham an opportunity to explain the reason for filing a prior action?

4. Did the court err in refusing to apply the doctrines of estoppel and full performance?

In support of appellants' allegations that a contract, either express or implied, existed between appellants and appellees, they rely on the conversation which took place on August 18, 1958, in the Adams Hotel bar. Appellant Graham testified as follows:

"Q. What did Mr. Webb say?

"A. Mr. Thomasson asked Mr. Webb about * * * told him that he had a lot of money coming out there, quite a bit of money, and that he would like to know where he was going to get his money, and if he didn't find out where he was going to get it, he was going to quit, stop the work. And Mr. Webb told him that 'We have to have that dust to make the cotton crops and you go ahead and put it on and we will pay you.'

"And then I talked to him about my money. I told him I had quite a bit coming and in the meantime he says, 'Well, you got a check for $5,000 today.' That 'I okayed it * * *.' And I says, 'Yes, but I have quite a bit more money coming and before I move back on to deepen it [the well] I am going to have to know where the rest of it is coming from.' Mr. Webb says 'Well, we need the water. We have to have it on that cotton crop, and you go ahead and move back on it, complete the well, and we will pay you what you * * *. They already owe you and what it costs to finish this well.' He says, 'We will pay you. We have to have the water to make the cotton crop.' "

Mr. Graham testified to a subsequent conversation with Mr. Webb at the well site and quoted Mr. Webb as saying "keep the rig going and you will get your money."

Appellant Thomasson, on direct examination testified regarding the conversation in a similar manner. He quoted Mr. Webb as saying "you go ahead and perform your services and as soon as we get some cotton in we will pay you for what you have done; what you are to do."

The depositions of the appellants, taken shortly after suit was instituted, reveal that both appellants at that time could not remember specific details of the conversation with Mr. Webb on the night of August 18, 1958. At the trial, Mr. Webb's testimony was substantially to the effect that he could not recall the details of the conversation and denied having made any promises or commitments to the appellants.

■ Appellants contend that their testimony concerning Webb's promise stands uncontradicted by Webb's mere denial, and therefore the existence of a contract was established. This contention is based on the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded but

should be accepted by the court as proof of the fact. Martin v. Industrial Commission, 75 Ariz. 403, 412, 257 P.2d 596 (1953). However, this rule has exceptions. Concededly, negative testimony cannot outweigh uncontradicted and unimpeached positive testimony, Knapp v. Arizona Highway Department, 56 Ariz. 54, 57, 104 P.2d 180 (1940); Illinois Bankers' Life Association v. Theodore, 44 Ariz. 160, 173, 34 P.2d 423 (1934), and such uncontradicted evidence may not be arbitrarily rejected when nothing intrinsic in the circumstances casts suspicion thereon. Otero v. Soto, 34 Ariz. 87, 92, 267 P. 947 (1928); Martin v. Industrial Commission, supra; Ft. Mohave Farms, Inc. v. Dunlap, 96 Ariz. 193, 198, 393 P.2d 662 (1964).

■ It is to be noted that the uncontradicted evidence upon which appellants rely is the testimony of interested parties. Notwithstanding a lack of contradiction, the trial court is not bound to accept as true the uncontradicted testimony of an interested party. City of Tucson v. Apache Motors, 74 Ariz. 98, 107, 245 P.2d 255 (1952); Clint v. Northern Assur. Co., 71 Ariz. 44, 47, 223 P.2d 401 (1950); In re Wainola's Estate, 79 Ariz. 342, 346, 289 P.2d 692 (1955). In Otero v. Soto, supra, the court quoting from Davis v. Judson, 159 Cal. 121, 128, 113 P. 147, 150 (1910), says:

" * * * The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness' own statement of the transaction, or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity. The manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact, and, as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony

credence, unless it appears that there are no matters of circumstances which at all impair its accuracy."

If the testimony of the appellants is disregarded, the record discloses no evidence of a promise to pay appellants for services rendered to Y-F Ranches. The trial court, in rendering its decision, deemed it necessary because of the nature of the case to explain its ruling. The court stated:

" * * * that a conversation was had at the Adams Hotel sometime during the evening of August 18, 1958, at which time the business affairs of Y-F Ranches were discussed between parties, but the court does not feel there was sufficient evidence to show the exact agreement, if any, that was made at that time; * * *."

■ In view of the fact that the appellants' prior statements on deposition were inconsistent with their testimony at trial, the later positive testimony of the appellants could have been mistaken or false, justifying the trier of fact in disregarding such testimony. Knapp v. Arizona Highway Department, supra; Ratley v. Industrial Commission, 74 Ariz. 347, 349, 248 P. 2d 997 (1952). This court will not disturb the findings and judgment of the trial court when supported by substantial evidence and all the evidence and inferences therefrom must be viewed in the strongest manner in favor of the appellees. Daru v. Martin, 89 Ariz. 373, 363 P.2d 61, 65 (1961); Sulger v. Maslin, 90 Ariz. 70, 365 P.2d 1113, 1114 (1961); Nordale v. Fisher, 93 Ariz. 342, 380 P.2d 1003, 1006 (1963); Almada v. Ruelas, 96 Ariz. 155, 393 P.2d 254, 257 (1964).

Appellees' position is that even assuming a promise to pay can be implied from the August 18 conversation, such promise is one to answer for the debt of another and in order to charge appellees thereon, a written memorandum thereof is required. 14 A.R.S. § 44-101(2). Appellants contend that the Statute of Frauds is inapplicable for the reason that the promise to pay was an original undertaking and not a collateral

promise. The lower court, as an additional reason for its decision, stated:

"* * * and further, assuming that an independent promise was made by the agent Webb, there is not sufficient evidence to show that it was the clear intention to bind Vegetable Oil sufficient to take the agreement outside the Statute of Frauds; * * *."

We agree with the lower court. The language of Webb's purported promise was not unequivocal and requires resort to extrinsic evidence from which the intention of the parties can be determined. McClave v. Electric Supply, Inc., 93 Ariz. 135, 141, 379 P.2d 123 (1963). Such intention can be ascertained solely from an examination of the circumstances—the deeds must illuminate the words. The subsequent conduct of the appellants in looking to Y-F Ranches for payment indicates that they continued to regard Y-F Ranches as the debtor. Admittedly the appellees had a vital pecuniary interest in the success of the Y-F Ranches' operation and were in a position to receive substantial benefit from the making of a direct promise. Where the leading object of the person promising to pay the debt which was originally that of another is to protect his own interest and not to become the other's guarantor, a promise based on sufficient consideration is valid under the Statute of Frauds, although not in writing. Steward v. Sirrine, 34 Ariz. 49, 56, 267 P. 598 (1928). However, the mere showing of a substantial interest on the part of the promisor, without more, sheds no light upon the intention of the parties at the time the alleged promise was made. As stated in McClave v. Electric Supply Inc., supra, 93 Ariz. at p. 142, 379 P.2d at p. 129:

"While the pecuniary benefits which * * * might derive from directly assuming the indebtedness * * * might have been great, the same benefits could equally have been the inducement for a collateral promise. Circumstances can hardly be conceived which would induce a person to promise to answer for the debt or default of another which would not at the same time benefit the promisor."

The record reveals nothing from which can be inferred an intention to charge appellees as original promisors by virtue of Webb's alleged promise. After August 18, 1958, the parties continued to deal with each other in the same manner as they had previously done. Therefore, we hold that the trial court properly found that appellants had failed to prove an original undertaking. The burden of overcoming the effect of a plea of the Statute of Frauds was upon appellants. Brown v. Beck, 68 Ariz. 139, 145, 202 P.2d 528 (1949); McClave v. Electric Supply Co., supra.

During the course of the trial, there was introduced in evidence a complaint filed by appellant Graham against Y-F Ranches to foreclose a materialman's lien previously filed. The foreclosure action had been instituted prior to the instant one. The trial judge did not permit Graham to testify as to his reason for filing the foreclosure suit and the appellants claim this was error. Generally, a complaint containing an admission is admissible against the pleader in another action, on behalf of a stranger to the former action. Udall, Arizona Law of Evidence § 177; Fox v. Weissbach, 76 Ariz. 91, 95, 259 P.2d 258 (1953); see Annotation in 63 A.L.R. 2d 412; Jones on Evidence, 5th Ed., Vol. 2, § 370. Graham's complaint filed in the foreclosure action was properly admitted in this trial to show that Graham looked to Y-F Ranches for payment of his claim for labor and materials furnished to Y-F Ranches. However, such evidence is rarely conclusive and may be explained, rebutted or contradicted. Fox v. Weissbach, supra; 20 Am.Jur., Evidence, § 630; Jones on Evidence 5th Ed., Vol. 2, § 313. As stated in the Fox case, supra, 76 Ariz. at p. 95, 259 P.2d at p. 260:

"It should be borne in mind, however, that we are not here dealing with a question of the effect of a pleading in an action wherein filed but rather its

evidentiary value in another suit. Unquestionably *allegations contained in a pleading used in other prior causes are admissions usable as evidence.*"

The court goes on to quote from Wigmore on Evidence, 3d Ed., Vol. IV, § 1058:

"'A quasi-admission, of the present sort, being nothing but an item of evidence, is therefore *not in any sense final or conclusive.* The opponent, whose utterance it is, may none the less proceed *with his proof in denial of its correctness;* it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence.'" (Emphasis in original)

The trial court erred in not allowing Graham to explain the inconsistency between his prior claim and the instant one, but the error was not prejudicial. The offer of proof revealed to the court that the proffered testimony would show that Graham, upon advice of counsel, filed the

lien foreclosure action merely as a protective measure. Exclusion of admissible evidence is not reversible error when in all probability its admission would not have changed the result. Odom v. First National Bank of Arizona, 85 Ariz. 238, 241, 336 P.2d 141 (1959); J. & B. Motors, Inc. v. Margolis, 75 Ariz. 392, 395, 257 P.2d 588, 38 A.L.R.2d 946 (1953).

Appellants further urge that the Statute of Frauds is inapplicable because they fully performed their part of the alleged contract, and in addition, that appellees are estopped to assert the Statute of Frauds. We have indicated herein that a promise by the appellees had not been established. Therefore, consideration of the applicability of the doctrines of full performance and estoppel is unnecessary to the disposition of this appeal.

Judgment affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.