402 P.2d 31

**INLAND WESTERN FINANCE COMPANY,**
an Arizona corporation, Appellant,

v.

**Eldon DAVIS and Virginia M. Davis,**
husband and wife, Appellees.*

**1 CA–CIV 64.**

Court of Appeals of Arizona.
May 17, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7981. The matter was referred to this Court pursuant to Section 12.120.-23 A.R.S.

284

Lovell B. Lieurance, Phoenix, for appellant.

James E. Flynn, Phoenix, for appellees.

STEVENS, Chief Judge.

■ The plaintiff-appellant filed suit to recover a money judgment in connection with a contract of conditional sale which contract the plaintiff owned by virtue of a nonrecourse assignment from the conditional seller, Dal Associates. The plaintiff paid a valuable consideration in relation to the assignment of the contract. The defendants signed the contract of conditional sale as the buyers. The defendants pleaded several affirmative defenses including matters relating to consideration and non-delivery of the items specified in the contract. The plaintiff filed no response to the affirmative matters which were set forth in the answer. The case was tried to the court without a jury. The trial court found for the defendants. There was no request for findings of fact and conclusions of law. In reviewing this case we view the evidence in the light most favorable to the decision of the trial judge. Graham et al. v. Vegetable Oil Products Company, et al., 1 Ariz.App. 237, 401 P.2d 242 (1965).

The plaintiff's manager testified that the plaintiff is in the business of buying commercial paper and making small loans. The plaintiff's manager is a man of 17 years of experience in the plaintiff's business field. Shortly before plaintiff purchased the contract the plaintiff's manager conferred with the conditional seller as to the possibility of buying the seller's commercial paper. The contract in question in this litigation was one of two contracts of conditional sale which the plaintiff had purchased from Dal Associates. In the other contract Mr. Foxworth was the conditional buyer.

On the 3rd day of March the buyers called at the seller's place of business and ordered certain furniture which was not in stock. The furniture was to be manufactured in California. The buyers made a down payment and signed the contract in question. The contract is regular and complete on its face.

A delivery receipt was signed simultaneously with the signing of the contract of conditional sale. The delivery receipt was signed by only one of the buyers, namely the husband. After the printed words "Date of Sale", was written "3-3-60". After the printed words "Delivery Date" was written "Rush" which word was underscored. The name, address and phone number of the buyers were written in the appropriate space. In print smaller than the print used in the balance of the document, located at the bottom of the page and above the buyer's signature, there is a 6 line statement commencing with the words, "I, the buyer, acknowledge delivery to me of the merchandise described in this delivery slip * * *".

On the 4th day of March, the seller produced the contract of conditional sale at the plaintiff's office and also produced the above signed "Delivery Receipt". The plaintiff then purchased the contract and the plaintiff would not have done so without simultaneously receiving the signed delivery receipt. The plaintiff made no inquiry relative to the fact of the delivery of the personal property described in the documents. The plaintiff relied upon the two documents.

When asked whether or not the word "Rush" did not place him on notice relative to the propriety of making inquiry as to

the fact of the delivery of the personal property, the plaintiff's manager testified,

> "No sir, there is nothing unusual about a rush order. The merchandise could well have been in stock in her store and delivered that day."

When the defendant-husband testified, he acknowledged that he was aware of the fact the commerical paper would probably be sold to the plaintiff. When asked with reference to the word "Rush" he stated that it was represented to him that by the use of the word "Rush" and the placing of his address on the document that this meant that the furniture would be shipped directly to his home rather than being sent to the seller and by the seller delivered to his home. This was the understanding of the defendants.

Within a few days Mr. Foxworth informed the plaintiff that the goods called for in his contract had not been delivered. At about the same time the plaintiff notified the defendants of the plaintiff's ownership of the contract and a payment book was sent to the defendants. Immediately after the receipt of the payment book the plaintiff became aware of the non-delivery in connection with the Foxworth contract and either the plaintiff contacted the defendant or the defendant contacted the plaintiff. In either event, the plaintiff learned of the fact of the non-delivery of the goods covered by the contract in question and these goods had not been delivered as of the date of the trial. The plaintiff became aware of the seller's shaky financial situation and it is uncertain from the record whether bankruptcy proceedings were about to be filed or whether they had in fact been filed as of the time of the conversations between the plaintiff and the defendant.

In the briefs of both parties they agree that the contract of conditional sale in question is not a negotiable instrument in the sense that the plainiff did not become a holder in due course. Both parties agree that as a general rule under these circumstances, the buyers can assert against the owner of the commercial paper the same defenses which would be available to the buyer against the seller, and we accept this legal principle as the law of this particular case.

The plaintiff urges that the general rule that the buyer can urge the same defenses against the contract holder that he can urge against the seller has a well recognized exception in those situations wherein the buyer is estopped to assert the affirmative defenses. The defendants urge that the plaintiff did not plead an estoppel and may not now urge an estoppel. The trial turned upon the question as to whether or not the plaintiff acted reasonably under all the circumstances. In this connection the trial court found for the defendant. We have no difficulty in realizing how the trial court could have reached its conclusions in view of the very limited knowledge which the plaintiff had in relation to the seller's business practices coupled with the plaintiff's failure to make inquiry as to the fact of delivery. The trial court could well have concluded that the plaintiff did not have the right to rely upon its general belief as to the meaning of the word "Rush" as distinguished from a lack of proper precaution in relation to the seller under the circumstances of this particular case.

We need not decide whether or not the plaintiff should have met the affirmative defenses with a pleading of estoppel. We need not decide whether or not the trial court erred in refusing to allow the plaintiff to reopen to present evidence on the subject of the reasonable value of the services of the attorney. It is our opinion that the record sustains the judgment of the trial court.

CAMERON and DONOFRIO, JJ., concurring.