NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STELLA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.H., *Appellees*.

No. 1 CA-JV 17-0210
FILED 12-14-2017

---

Appeal from the Superior Court in Maricopa County
No. JD509033
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1        Stella H. ("Mother") appeals the juvenile court's order terminating her parental rights to J.H.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        The Department of Child Safety ("DCS") became involved with the child in March 2013, two days after he was born, due to Mother's incarceration for drug-related charges.  In August 2013, the juvenile court found the child dependent as to Mother and ordered reunification services, which began the following month when she was released from incarceration.  Services included weekly supervised visits, parent aide, psychological evaluation, referral to TASC for drug testing, substance abuse assessment and treatment, and transportation assistance.  Through Mother's self-disclosure to Terros, DCS learned that Mother had a history of substance abuse of more than 20 years.

¶3        In October 2014, DCS filed a motion to terminate Mother's parental rights to the child based on Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3) (chronic substance abuse), 8-533(B)(10) (termination within the preceding two years for the same cause), and 8-533(B)(8)(c) (out-of-home care for fifteen months or longer).  Following a contested severance hearing held in September 2015, the juvenile court denied DCS's motion, finding that "given Mother's recent demonstration of her serious commitment to remaining sober coupled with her demonstrated sobriety in recent months, the Court does not believe that DCS has demonstrated by clear and convincing evidence that there are reasonable grounds to believe that Mother's condition will continue for a prolonged indeterminate period."  The court also found that "it is in the child's best interest to give Mother some additional time and the opportunity to demonstrate that she is capable of parenting J[.H.]."  The child, however, remained dependent as to Mother and in the care of a licensed foster family.  In December 2015, Mother relapsed on methamphetamine.

**¶4** In September 2016, DCS filed its second motion for termination of Mother's parental rights, alleging Mother's inability to discharge parental responsibilities based on her history of chronic substance abuse and that the child had been in out-of-home care for fifteen months or longer. *See* A.R.S. §§ 8-533(B)(3), (B)(8)(c). After a three-day evidentiary hearing, the juvenile court terminated Mother's parental rights on both grounds alleged in the petition. Mother timely appealed.

## DISCUSSION

**¶5** To support an order for termination of parental rights, the juvenile court must find that one or more of the statutory grounds for termination have been proven by clear and convincing evidence. A.R.S. § 8-537(B); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). In addition, the court must find by a preponderance of the evidence that termination is in the best interests of the child. *Mario G. v. Ariz. Dep't. of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 11 (App. 2011) (citing *Michael J.*, 196 Ariz. at 249, ¶ 12); *see also* A.R.S. § 8-533(B).

**¶6** As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we will accept the court's findings of fact "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). We view the evidence in the light most favorable to sustaining the juvenile court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13 (App. 2005).

**¶7** Under A.R.S. § 8-533(B)(3), the juvenile court may terminate parental rights to a child if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Chronic substance abuse persists over a long period, but is not necessarily constant. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). Generally, a parent's temporary abstinence from drugs and alcohol does not outweigh a significant history of abuse or consistent inability to abstain during the case. *Id.* at 379, ¶ 29. The child's interest in permanency must prevail over a parent's uncertain battle with drugs. *Id.*

3

**¶8**        Mother contends no reasonable evidence supports the juvenile court's order terminating her parental rights.  Specifically, she argues that the court improperly relied on the "stale" testimony of Dr. Hagger in concluding that Mother could not safely parent the child.[1]  Dr. Hagger's 2015 report and testimony, however, were a relatively small portion of the evidence presented by DCS supporting the termination.  Dr. Hagger merely concluded that in light of Mother's relapses in December 2015, August 2016, and January 2017, the initial prognosis from January 2015, should be adjusted from "guarded" to "poor."

**¶9**        In addition to Dr. Hagger's testimony, the court received and reviewed 35 exhibits, including the transcripts from the first termination hearing, testimony from the current DCS caseworker, and testimony from Mother.  The exhibits included reference to a March 2016 psychological consultation, copies of Mother's drug tests, and DCS reports dating back to 2013.

**¶10**        "As the trier of fact, the juvenile court could properly consider the evidence of Mother's prior substance abuse when evaluating whether reasonable grounds existed to conclude her inability to discharge parental responsibilities would continue for a prolonged and indeterminate period." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016).  That evidence may include "the length and frequency of Mother's substance abuse, the types of substances abused, . . . prior efforts to maintain sobriety, and prior relapses." *Id.*

**¶11**        At the severance hearing, Mother acknowledged a long history of substance abuse dating from her teen years and continuing through much of the dependency proceedings.  In August 2016, Mother and a newborn son tested positive for amphetamines.  Mother testified that although she had not used methamphetamine since December 2015, she inadvertently ingested amphetamine in August 2016.  The court rejected Mother's explanation that her boyfriend accidently gave her Phentermine—a weight loss drug containing amphetamine—instead of her contraction-reducing medication.  Consistent with her testimony about a prior relapse after testing negative for an extended period of time, the court was not required to accept her explanation that the amphetamine use was inadvertent. *See Graham v. Vegetable Oil Prods. Co.*, 1 Ariz. App. 237, 241 (1965) ("[T]he trial court is not bound to accept as true the uncontradicted

---

[1]        Mother does not challenge any specific factual finding made by the juvenile court nor does she challenge the court's legal conclusion that she has a history of chronic substance abuse.

testimony of an interested party."). Likewise, in light of Mother's sporadic participation in drug treatment, the court was not persuaded by Mother's contention that her January 2017 positive test for methamphetamine was erroneous. Instead, the court found that "Mother continues to abuse illegal substances despite remaining sober for a significant period of time in 2015."

¶12 Mother's temporary abstinence from drugs does not outweigh her significant history of abuse or her inability to abstain during this protracted dependency proceeding. *See Raymond F.*, 224 Ariz. at 379, ¶ 29 (explaining "[a parent]'s failure to remedy his drug abuse; despite knowing the loss of his children was imminent, is evidence he has not overcome his dependence on drugs"). The evidence in this record is sufficient to support the juvenile court's findings that Mother is unable to discharge her parental responsibilities due to chronic substance abuse and there are reasonable grounds to believe the condition will continue for a prolonged indeterminate period.

¶13 Because we conclude that reasonable evidence supports termination for chronic substance abuse, we need not address the out-of-home placement grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (explaining that if sufficient evidence supports any of the statutory grounds on which the court ordered severance, it is unnecessary to address arguments relating to the other grounds). Similarly, because Mother does not challenge the juvenile court's best interests finding, we need not address it.

¶14 Mother also argues the juvenile court failed to make adequate factual findings and legal conclusions as to diligent efforts made by DCS to reunify parent and child on each of the severance grounds. We review a severance ruling for an abuse of discretion, accepting factual findings unless clearly erroneous. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶15 Arizona Rule of Procedure for the Juvenile Court 66(F) provides that if the moving party meets its burden of proof in a termination case, "the court shall . . . [m]ake specific findings of fact in support of the termination of parental rights . . . ." The findings must be in writing. *Id.* "The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly what issues were decided and whether the lower court correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012) (citations omitted). "[W]e will presume that the juvenile court made every finding necessary to support the severance order if reasonable

evidence supports the order." *Mary Lou C.*, 207 Ariz. at 50, ¶ 17; *see also Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52, ¶ 19 (App. 2007) ("When considering the trial court's express findings, we affirm the trial court's order if the facts at trial support the trial court's findings whether or not each supportive fact is specifically called out by the trial court in its findings.").

¶16        Here, the juvenile court considered the numerous services offered by DCS, over a period of approximately four years, beginning in 2012 after Mother's parental rights were terminated to two of her other children, through the date of the severance hearing regarding J.H.  The court expressly found that DCS made "diligent efforts to provide Mother with appropriate reunification services."  These services included individual counseling, parent aide services, a psychiatric evaluation, substance abuse evaluations, treatment and testing, as well as transportation assistance.  The DCS caseworker testified that Mother's participation in the offered services was generally "sporadic" or "unsuccessful."  She also testified that Mother received "roughly 15" referrals to TASC and five referrals to Terros since the inception of this case. Despite approximately four years of services, the caseworker expressed ongoing concerns about Mother's substance abuse, parenting skills, housing situation, and lack of employment.  She also opined that at the time of the hearing Mother would not benefit from any additional services. Accordingly, the juvenile court made adequate factual findings as to reunification services provided to Mother, and such findings are supported by the record.

## CONCLUSION

¶17        Based on the foregoing, we affirm the juvenile court's order terminating Mother's parental rights to the child.



AMY M. WOOD • Clerk of the Court
FILED:  AA