Frank S. Frost et al., Appellees, v. Noah Van Cleef et al., Appellants.

Gen. No. 39,057.

Heard in the third division of this court for the first district at the October term, 1936. Opinion filed June 30, 1937. Rehearing denied July 12, 1937.

SILBER, CLAUSEN, HIRSH & WOLEY and CLARENCE J. SILBER, all of Chicago, for appellants.

Robert F. Kolb, of Chicago, for appellees; Francis M. Cooper, of Chicago, of counsel.

Mr. Justice Hall delivered the opinion of the court.

Judgment was entered in favor of plaintiffs and against defendants in the superior court of Cook county for the sum of $1,200, after a trial by the court without a jury. The action is predicated upon an alleged breach of an oral contract, wherein it is claimed that defendants undertook and agreed to rubberize certain fabric furnished by defendants to plaintiffs, to be used by plaintiffs in the manufacture of upholstering for church kneelers.

Elmer Frost, an employee of plaintiffs, testified to the effect that about July 14, 1931, he had a conversation with one of the defendants—whom he identified in court as Noah Van Cleef—at defendants' place of business, with reference to purchasing rubberized fabric or cloth from defendants, and that a man named Netzel was with the witness at the time; that Frost inquired of Van Cleef whether or not the rubberized material which defendants manufactured could be used in upholstering, and that Van Cleef's reply was that it could be so used; that the witness told Van Cleef that plaintiffs desired to upholster pew kneelers in churches, and that it had been found that artificial leather was not satisfactory, because it would crack up and deteriorate; that Van Cleef told the witness that defendants were, at the time, using rubberized fabric for automobile tops and seats, and that the witness afterwards gave defendants a "sample order" for a considerable amount of the material for plaintiffs to try out. The record indicates that this order is dated September 30, 1931, and recites, in substance, that plaintiffs purchased from defendants 150 yards of rubberized cloth. The order contains the following recitation: "Per sample attached." The record does not show clearly,

but we conclude from the briefs of both parties that the words "per sample attached," means that the "sample" is the material so purchased from defendants by plaintiffs which was to be used by plaintiffs for experimental purposes. Thereafter, and until September 15, 1932, defendants furnished a considerable amount of vulcanized cloth, to be used for upholstering pew kneelers. Prior to November 15, 1933, plaintiffs found that the fabric furnished by defendants and used as the base for the rubberized material, was not satisfactory, because it was too light and had a tendency to stretch and wrinkle after it was used in upholstering, and that Frost then inquired of defendants as to whether or not a stronger fabric would not be better, and whether such a fabric could be rubberized, the same as that which plaintiffs had been using; that defendants assured him that this could be done, and that thereupon the witness ordered a number of yards of material to be vulcanized upon fabrics or cloth to be furnished by plaintiffs. Thereafter, the plaintiffs received from defendants various shipments of this rubberized material, which had been processed upon cloth so furnished by plaintiffs. The witness, Frost, testified that he delivered the cloth to be rubberized to a man named Dermott of defendants' firm, and that the witness then stated to Dermott that plaintiffs desired the cloth rubberized "the same as we had received before." Thereafter several shipments were made by defendants to plaintiffs of this processed material, which proved to be satisfactory. The witness, Frost, testified that about November 5, 1933, he spoke to defendant Paul Van Cleef, and stated to Van Cleef, "I think we are entitled to a better price, and Paul (meaning Paul Van Cleef) said to me that he would give me a better price." The record indicates that after this conversation, a shipment was made by defendants which had been processed as above suggested,

which shipment was received by plaintiffs on or about November 22nd, following. This shipment was tendered back to defendants, as was a shipment made on December 15, 1933, because, as plaintiffs allege, the material did not conform to samples furnished, and would not answer their purpose. It is the contention of plaintiffs that the product furnished by defendants on the last mentioned dates did not conform to the samples furnished plaintiffs, and that plaintiffs were thereby damaged. They seek to recover certain amounts paid to defendants for material and the cost and expense of certain work done in upholstering kneelers.

It is the contention of defendants that there were no warranties, either express or implied, that the sales were not made by sample when plaintiffs supplied the fabric for processing, and that plaintiffs did not rely on the skill and judgment of defendants in this work, because plaintiffs themselves were experimenting with a new product, and so advised defendants; that the evidence shows that there were no warranties on the part of defendants, and that all defendants were required to do was to render the processing service in a good and workmanlike manner, which the evidence shows was done. It is further claimed by defendants that after a dispute concerning the matters in question, an accord and satisfaction was had between the parties on November 15, 1933; also, that the evidence fails to disclose any defect in the material furnished by them to plaintiffs.

Frank M. Netzel, one of the plaintiffs and a partner in the Frost Rubber Works, and who accompanied Elmer Frost on his visit to defendants' institution on July 14, 1931, testified to the effect that he had been in the rubber business for 38 years, and was familiar with the business; that he knew the process of compounding and vulcanizing rubber; that on the occasion of his visit to defendants' plant, already referred to, the witness stated to Van Cleef that plaintiffs were

getting ready to go into the business of upholstering kneelers for churches; that he had tried rubber coating in a small way, and that he asked Van Cleef about using defendants' material, and that Van Cleef answered that defendants were selling the material for automobile tops; that the witness then asked Van Cleef for samples of material to be used for church kneelers; that Van Cleef furnished the witness with samples of soft suede cloth, and that the witness told Van Cleef that plaintiffs expected to do considerable business with churches; that he, Netzel, covered some kneelers in two churches with this material, and that the covering at first seemed to be satisfactory, but that he was afterwards told by the people representing the church that the upholstering of the kneelers was not satisfactory; that he reported this to Dermott of defendants' firm, and that he was directed by Dermott to send the material back; that he subsequently went to defendants' place of business and talked to a Dr. Frick, and told him that the material was not vulcanized properly, and that he was afterwards told by Paul Van Cleef that if the material was not right, defendants would take it back in 30 days and give plaintiffs credit for any moneys paid on it; that on April 11, 1934, plaintiffs returned some of the material to defendants, but defendants would not accept it. This witness stated that in his opinion, the material was not properly vulcanized.

John H. Kelly, Jr., a research rubber chemist, a witness for plaintiff, testified to the effect that at the request of plaintiffs, he examined several rubber samples to determine whether they were properly vulcanized or not, that the common test to determine whether rubber is vulcanized properly, is to try to dissolve it into a solvent called xylol, and that one of the samples which he put into the xylol went into solution within a few moments.

Noah Van Cleef, one of the defendants, testified that his institution were manufacturers of various types of rubber products, including rubber cements, friction tapes and rubberized fabrics, and that defendants had been in the business for 26 years. He denied that he had a conversation with Elmer Frost on July 14, 1931, or at any other time, as narrated. He further stated that Van Cleef Brothers do not manufacture rubberized fabrics for use in connection with automobile tops or seats, and that he did not tell Frost that they did.

Felix Van Cleef testified in substance, that in July, 1931, he had a conversation with Elmer Frost at defendants' office, and that they, meaning plaintiffs, indicated to the witness their desire to purchase leatherette for kneeling pads; that the witness showed them samples of original leatherette, which is normally used for the manufacture of raincoats, and that they purchased a few yards, apparently for samples. On cross-examination this witness testified that at that time Frost and Netzel stated that it was their intention to use the material mentioned for kneeling pads in churches, and that the witness then stated that he had no idea as to whether or not it would be suitable for that purpose, that he was not acquainted with the requirements in that connection, and that at that time, Frost bought 11 yards of the material.

Paul Van Cleef, one of the defendants, testified that he was a graduate of the University of Chicago, specializing in organic chemistry, particularly, rubber chemistry; that he had a conversation with Elmer Frost shortly after Frost purchased samples of defendants' product in 1931; that Frost indicated to the witness that plaintiffs were desirous of developing a product which would be suitable for kneelers in churches, and that Frost told the witness it was pioneer work, and that defendants continued to furnish material to plaintiffs until about 1934; that towards the end of the dealings between the parties, plaintiffs

expressed a desire to use a cloth of greater strength for their base, and furnished defendants with a sample of this cloth, and that there was no change made by defendants in the processing of the cloth furnished by plaintiffs from that employed in the processing of materials which were originally furnished to plaintiffs; that the material manufactured by defendants is generally used for the manufacture of raincoats, that defendants had never sold any of it for use for automobile tops, and that he never made any such representation to Frost; also that he had no conversation with Frost on the subject of any change in the material used in rubberizing cloth. He further testified in substance, that in November, 1933, after a controversy with plaintiffs, the witness made a settlement with plaintiffs as an accommodation for the pains which plaintiffs had been put to in connection with their effort to use defendants' product for covering kneelers, and that Frost's only complaint to the witness was that the kneelers became soiled; that the witness told Frost that this could be expected because of the light colored material used, which would soil more easily than material of a darker color; that at this time he denied responsibility in the matter, because the whole thing was a proposition which had been initiated by Frost, and was based entirely on Frost's idea that plaintiffs could use raincoat cloth as a substitute for leather, with greater profit to plaintiffs. This witness further stated that at the time of his last conversation with Frost, plaintiffs owed defendants in the neighborhood of $200 or $300; that he then told Frost that if plaintiffs would make an immediate settlement, defendants would make an allowance, and that Frost told the witness that he would cause a check to be sent to defendants, and that would end the matter as far as defendants were concerned. Van Cleef denied that he ever had any conversation with any member of plaintiffs' firm with respect to re-

turning materials for further vulcanizing or curing, but that he did state to Frost that if any difficulty arose as to cleaning the kneelers, and that if plaintiffs would send a couple of the kneelers to defendants, defendants would demonstrate to plaintiffs how they could be cleaned by washing them with naphtha. On cross-examination this witness stated that he saw some of the kneelers which were returned to Van Cleef Brothers for cleaning, and that they were dry cleaned with naphtha, and that the soil and dirt which had accumulated on them was removed and that that process of cleaning had no effect on the rubberized material.

Whether the original sales of this rubberized fabric to plaintiffs were made upon samples furnished by defendants to plaintiffs, is beside the point, because it definitely appears from the record that the controversy between the parties is over the processing done by defendants to fabric furnished by plaintiffs, and that no samples thereof were given by defendants to plaintiffs of this processed material after it had been treated and before it was delivered. It is also clear from the record that plaintiffs were experimenting in the use of this rubberized material in a manner and for a purpose with which defendants were entirely unfamiliar. We are, therefore, of the opinion that the Uniform Sales Act, ch. 121a, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 121.05–121.90, cited by plaintiffs, has no application, because it clearly appears from the record that the plaintiffs were not relying upon the defendants' skill and judgment as to whether or not the material would serve plaintiffs' purpose.

In *Fuchs & Lang Mfg. Co. v. Kittredge Co.*, 242 Ill. 88, the Supreme Court said:

''Where a known, described and definite article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, described and definite article be ac-

tually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. In a contract for the sale of an article under its patent or other trade name there is an undertaking that the article delivered shall be of the kind ordered but not that it shall be fit for any particular purpose. If the buyer gets what he bargained for, there is no implied warranty though it does not answer his purpose. (*Peoria Grape Sugar Co. v. Turney,* 175 Ill. 631; *Diebold Safe and Lock Co. v. Huston,* 55 Kan. 104; *Mason v. Chappel,* 15 Gratt. 572; *Gossler v. Eagle Sugar Refinery,* 103 Mass. 331; *Seitz v. Brewers' Refrigerating Machine Co.,* 141 U. S. 510; *Chanter v. Hopkins,* 4 M. & W. 399; *District of Columbia v. Clephane,* 110 U. S. 212; *Ollivant v. Bayley,* 5 Q. B. 288.)''

While there was some proof offered by plaintiff tending to show that the cloth furnished by them to defendants was not properly rubberized or vulcanized, so as to serve plaintiffs' purpose, we find nothing in plaintiffs' brief to indicate that they rely upon such alleged fact. Plaintiffs' position seems to be that there was both an express and implied warranty that the material would serve plaintiffs' purposes.

In *Kersten v. West Coast Roofing & Manufacturing Co.,* 204 Ill. App. 447 (abstract opinion) an action was brought to recover for labor and materials furnished in the installation of a boiler in defendant's building. Defendant contended that the boiler did not meet his requirements. The evidence showed that the inability to meet defendant's requirements was not due to any defect in the boiler or the workmanship, but to its size, and that the boiler was constructed according to specifications furnished by the defendant, and the court said: ''Where a contract calls for the delivery of a certain specified kind of article, there is no implied warranty of its fitness for any purpose other than that it be the kind specified.''

Here the plaintiff had accepted and paid for all of the shipments of this processed fabric prior to the two shipments in controversy dated November 15 and November 22, 1933, evidently believing that after they had received, and presumably examined the material it would suit their requirements. As stated, there is nothing in the record to indicate that samples were furnished of the materials included in these two shipments upon which plaintiffs relied. Whether the rubberized fabric in these last shipments was different from the material included in prior shipments, does not appear from the record.

We are of the opinion that no action can be predicated upon any of the shipments made prior to the last two mentioned. If, however, the facts should disclose that the material included in these two shipments proved to be inferior to the former shipments, plaintiffs might possibly predicate an action upon this fact. Therefore, the judgment is reversed and the cause remanded.

*Judgment reversed and remanded.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.