411 P.2d 814

Frederick James GALLAGHER, d/b/a Fred J. Gallagher Construction Co. and Fidelity & Casualty Co. of New York, a New York corporation, Appellants,

v.

VIKING SUPPLY CORPORATION, a Texas corporation, Appellee.*

No. 2 CA–CIV 72.

Court of Appeals of Arizona.

March 3, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's No. 8038. The matter was referred to this Court pursuant to A.R.S. § 12–120.-23.

Johnson, Darrow, D'Antonio, Hayes & Morales, by Lawrence P. D'Antonio, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for appellee.

HATHAWAY, Judge.

Appellants (defendants below) appeal from a judgment entered in superior court, Pima county, Arizona, in favor of appellee (plaintiff below). In the spring of 1960, the City of Tucson awarded a contract for the installation of water mains to Gallagher. The contract, referred to as Contract I–1, specified, inter alia, that all cement asbestos pipe installed be Class 150 pipe of the following or equal:

Johns-Manville, ............"Ringtite"
Keasbey and
    Mattison Century, ......."Fluid-tite"
S. A. Eternit, ............"Selftite"

Viking, a pipe supplier, was familiar with the specifications of Contract I–1 concerning cement asbestos pipe, and on May 4, 1960, sent a letter to Gallagher offering to sell 27,670 feet of 8-inch cement asbestos pipe at $2.01 per foot. Gallagher accepted by a letter dated June 7, 1960, in which he reminded Viking that all materials had to conform to the specifications set forth in Contract I–1. This contract further provided:

"After execution of the Contract changes of brand named, trade named, trade marked, patented articles, or any other substitutions will be allowed only on the Superintendent's written order * * *

"Whenever the words * * * "OR EQUAL" are used * . * * it is understood that it is the judgment, discretion, or decision of the Superintendent to which reference is made.

"All materials and articles of any kind necessary for this work are subject to the approval of the Superintendent and his judgment and decision shall be final and conclusive."

On or about June 11, 1960, Gallagher received the first shipment of pipe from Viking and noticed that it was a brand named Asbestolite. Gallagher testified that he called Viking's Arizona representative who assured him that the pipe met the specifications as set forth in Contract I–1, whereupon Gallagher proceeded to install the pipe. Although the contract required that an open-trench procedure be followed for testing ability to withstand pressure, the pipe was tested after the trenches were closed. Gallagher testified that he did not use the open-trench procedure because the City asked him not to in order to save time and also because there was no reason to as "pipe is pipe."

Gallagher received payment only after the pipe had been tested and accepted by the City. The first pressure test was conducted after at least 5,000 feet of pipe had been installed and completely covered by dirt. Initially, Gallagher could not get a satisfactory test as leaks had developed. He ultimately succeeded, however, after locating and repairing the leaks. When approximately 11,000 feet of Asbestolite had been installed, the City purportedly advised Gallagher to stop using Asbestolite. Gallagher switched to another brand of pipe which he procured from another supplier as Viking was unable to supply it. An inspector for the City who was called as a defense witness unequivocally denied having told Gallagher to discontinue the use of Asbestolite.

Viking filed suit against Gallagher and the bonding company to recover an alleged balance due for the materials delivered to and used by Gallagher in the performance of the subject contract. Gallagher answered and counterclaimed for damages alleging (1) breach of contract by Viking, (2) that the pipe furnished was not of merchantable quality, (3) it was not fit for the particular use or purpose intended, (4) it was not in accordance with the description required by Contract I–1 and (5) that Viking had perpetrated a fraud upon Gallagher. The case was tried to a jury which returned a verdict in Viking's favor both as to its claim and Gallagher's counterclaim. The following issues were resolved in Viking's favor:

1. Whether Viking was entitled to compensation for the pipe delivered to Gallagher.

2. Whether the pipe delivered by Viking to Gallagher was in compliance with the requirements of Contract I–1.

3. Whether the pipe was defective.

Defendants have set forth nineteen assignments of error which fall into the following categories:

(a) Trial court's refusal to direct a verdict for the defendants at the close of plaintiff's case.

(b) Trial court's dismissal of defendants' fraud claim.

(c) Admission or rejection of evidence.

(d) Instructions.

We shall consider the numerous assignments of error under the applicable general category.

### Motion for Directed Verdict

Defendants moved for a directed verdict at the close of plaintiff's case on the ground that plaintiff failed to make out a prima facie case. We are of the opinion that the trial court was correct in refusing to direct a verdict. Defendants contend, and correctly so, that the probata must correspond to the allegata, but we find no failure in this respect. The plaintiff alleged in substance the furnishing, at Gallagher's request, of certain pipe to be used in the performance of a contract with the City at a price agreed upon by plaintiff and Gallagher and that a certain sum was still due and owing to the plaintiff. The defendants' answer admitted that "on or about June 7, 1960, Plaintiff and Defendant Gallagher entered into a contract whereby Plaintiff agreed to supply to Defendant Gallagher certain pipes * * * to be used by Defendant Gallagher in the performance of a certain contract * * * known as Contract I–1."

The defendants argue that the plaintiff failed to establish a contract for Asbestolite and the reasonable value thereof and therefore failed to sustain its burden of proof. This argument is without merit. The responsive pleading filed by defendants admitted the existence of a contract for the sale of "certain pipe." The contract of the parties, evidenced by Viking's written offer and Gallagher's written acceptance, established the price of the goods sold and delivered to Gallagher. The correctness of the invoices for pipe delivered, with certain exceptions, was admitted by Gallagher in answers to interrogatories submitted by the plaintiff. Viking's president testified that credit had been given to Gallagher as to the excepted items and payments on account.

■ The plaintiff's proof corresponded with the allegations of the complaint, to wit, that pipe was furnished by the plaintiff to Gallagher at his request and that a certain sum remained unpaid. It did not devolve upon plaintiff to prove that Asbestolite met the "or equal" requirement of Contract I–1 nor to prove a contract for the sale of pipe brand named Asbestolite. Whether the pipe failed to meet the specifications of Contract I–1 was defensive matter to be established by Gallagher who had alleged Viking's breach of contract as an affirmative defense.

### Dismissal of Fraud Claim

■ The counterclaim seeking damages for fraud on the part of Viking was based on an alleged representation by Viking's agent that the pipe shipped to Gallagher was within and met the specifications as set forth in Contract I–1. It is a well-settled principle that there can be no actionable fraud without a concurrence of all of the nine essential elements. Wilson v. Byrd, 79 Ariz. 302, 307, 288 P.2d 1079 (1955); Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 259, 355 P.2d 898 (1960). A failure to prove any one of the elements is fatal. Cullison v. Pride O'Texas Citrus Association, supra.

■ One essential element of actionable fraud is the falsity of the alleged representation. We find that proof of this element is lacking. The record discloses the contrary—that Asbestolite met the "or equal" classification set forth in Contract I–1 as it was accepted by the City on May 10, 1960, approximately one month before delivery to Gallagher. The defendants having failed to prove the falsity of the representation, the trial court quite properly withdrew the fraud issue from the jury. Submission to the jury for speculation as to the existence of the requisite elements would have been improper. See Wilson v. Byrd, supra.

Since the trial court correctly withdrew the fraud issue, we need not consider the assignment of error relative to the failure to instruct thereon.

## Evidence

■ Six assignments of error are devoted to the admission or exclusion of evidence. A letter written to Viking on Gallagher's behalf by his former attorney was admitted into evidence over defendants' objection. The letter referred to the amount Gallagher felt he was entitled to offset against Viking's bill as reimbursement for pipe defects as follows:

"The legitimacy of the above claimed failures can be verified by contacting the City of Tucson. The total actual expense of these failures amounts to $6,115.00."

Defendants claim that the letter should have been excluded as it was an offer of compromise. We agree that a statement which is in the nature of a settlement proposal or offer should be excluded. Udall, Arizona Law of Evidence § 97. However, a letter which demands an amount for an alleged claim cannot be excluded under this theory. It is admissible as an admission against interest to show that the amount claimed was less than the amount claimed in the counterclaim. J. & B. Motors, Inc. v. Margolis, 75 Ariz. 392, 395, 257 P.2d 588, 38 A.L.R.2d 946 (1953). The determining factor is the form of the statement, whether it is explicit and absolute. If its purpose is to declare a fact really to exist, rather than to concede a fact hypothetically in order to effect a settlement, the statement is admissible. 4 Wigmore, Evidence § 1061 (3d ed. 1940). Applying this criterion, the letter was properly admitted as an admission against interest. It in nowise purports to concede a fact solely for purposes of settlement. Its tenor is unequivocal and precise.

■ We do agree with defendants' contention that it was error to deny Gallagher an opportunity to explain the inconsistency between the amount claimed in the letter and the amount alleged in the counterclaim. Graham v. Vegetable Oil Products Company, 1 Ariz.App. 237, 243, 401 P.2d 242 (1956). A quasi-admission, as Professor Wigmore labels an admission against interest, is nothing more than an item of evidence and therefore neither final nor conclusive. It is merely an inconsistency which discredits the party's present claim and his other evidence. 4 Wigmore, Evidence § 1059 (3d ed. 1940). We find, however, that the erroneous exclusion of Gallagher's explanation does not constitute reversible error as in all probability its admission would not have changed the result. Graham v. Vegetable Oil Products Company, supra; Odom v. First National Bank of Arizona, 85 Ariz. 238, 241, 336 P.2d 141 (1959).

■ Gallagher testified concerning his alleged damages and listed the various items on a chart. The trial court's refusal to allow the graphic illustrations into evidence is assigned as error. Defense counsel concede that the admission or exclusion of evidence is within the discretion of the trial court, but contend that such discretion was abused because the jury could not be expected to remember and understand the lengthy testimony without the visual aids. As we have pointed out, the witness was permitted to graphically illustrate his testimony and additionally we find that it was used by counsel in argument. We find no error in the refusal to permit the written compilation of figures to go to the jury room. Demonstrative evidence is such evidence as is addressed directly to the senses of the jury without the intervention of the testimony of witnesses. 32 C.J.S. Evidence § 601. The chart involved here was merely one form of the witness' testimony which should not have been unduly emphasized by being allowed in the jury room during deliberations. See McCormick on Evidence § 184.

During the trial, Gallagher's construction foreman testified concerning the numerous difficulties encountered in the performance of Contract I–1, with particular emphasis on the number of leaks which had developed in the installed pipe. Defense counsel offered the foreman's "log" book in evidence as a business record but

its admission was denied. Defendants contend that it was error to exclude the exhibit as proof that 65 leaks occurred. In denying admissibility the court stated that the exhibit was irrelevant, immaterial and hearsay and that it was impossible to sort out the evidence which was competent. A.R.S. § 12–2262 (Uniform Business Records as Evidence Act) provides in part:

"B. Business records. Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as justify its admission."

■■■ We have examined the excluded exhibit and must perforce endorse its exclusion as it is replete with entries which were irrelevant and immaterial. The exhibit was material only to show the number of leaks. However, on questioning by plaintiff's counsel, it was elicited from the foreman that on certain days the exact number of leaks was not recorded but the notation would merely indicate "leaks." Under A.R.S. § 12–2262 the trial court has great discretion concerning the admission of records kept in the course of business. Builders Supply Corporation v. Shipley, 86 Ariz. 153, 157, 341 P.2d 940 (1959). In the light of all the circumstances which tend to detract from the "trustworthiness" element justifying admission of regular business entries, we can find no abuse of discretion in excluding the proffered exhibit.

*Instructions*

■■■ Error is assigned to the court's refusal to instruct the jury to the effect that Viking was not entitled to recover on its complaint if the jury found that it had breached its contract with Gallagher as to the quantity and quality of the pipe. No authority was cited for giving the requested instructions nor has any authority been cited on appeal to support the contention of error. Defendants merely complain that the refusal to give the instructions withdrew their defense theory from the jury's consideration. Their theory, however, that they could retain the benefits of the pipe without being required to pay for it is completely without merit.

Where the seller of goods has breached the terms of the sale, the buyer may either (a) affirm the sale, notwithstanding the breach, and carry out his part of the agreement; (b) rescind the sale returning the property and recovering anything already paid on the purchase price; (c) affirm the sale, and, if he has been damaged by the breach of contract by the seller, set off the amount of damage on a suit by the seller for the balance of the purchase price; or (d) sue the seller for damages. California Steel Prod. Co. v. Wadlow, 58 Ariz. 69, 74, 118 P.2d 67 (1941); Authorized Supply Co. of Arizona v. Swift & Co., 271 F.2d 242, 246 (9th Cir. 1960); A.R.S. § 44–269.

It is further contended that the lower court erred in refusing to give defendants' requested instructions numbers 9, 11, 14, 15, all of which mentioned an implied warranty of fitness for the use intended. A.R.S. § 44–215, subsec. 1 provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

■■■ We agree with defendants' contention that warranties of fitness and of merchantability are not mutually exclusive and may coexist. Davidson v. Wee, 93 Ariz. 191, 197, 379 P.2d 744 (1963); Nal-

bandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 283, 399 P.2d 681 (1965). This principle is not applicable here.

■■■ There is no evidentiary basis for instructions as to an implied warranty of fitness for a particular purpose. The record discloses nothing to indicate that the selection of pipe for Gallagher's purpose was exclusively within Viking's control. In order for such an implied warranty to be raised, the buyer must show that he ordered goods for a particular purpose which was communicated to the seller and relied upon the seller to select the goods suitable for that purpose. Carney v. Sears, Roebuck & Co., 309 F.2d 300, 303 (4th Cir. 1962). Where the selection of the article is actually made by the buyer, there is no warranty of fitness for any particular purpose other than the purpose for which the article is ordinarily sold notwithstanding the buyer communicates to the seller the particular purpose. Vitro Corp. of America v. Texas Vitrified Supply Co., 71 N.M. 95, 376 P.2d 41, 51 (1962); 46 Am.Jur., Sales § 351. Gallagher's agreement with Viking called for the delivery of certain specified pipe, three named brands or their equivalent. Such being the case, there is no implied warranty of its fitness for any purpose other than that it be the kind specified. Frost v. Van Cleef, 291 Ill.App. 363, 9 N.E.2d 977, 980 (1937); Beaman v. Testori, 323 Mich. 194, 35 N.W.2d 155, 157 (1948).

The jury was instructed as to breach of an implied warranty that the pipe meet the description and an implied warranty of merchantable quality. They were properly instructed as to the issues involved and the circumstances did not warrant consideration of an implied warranty of fitness.

■■■ Defendants challenge the correctness of an instruction to the effect that one seeking to recover damages for breach of warranty cannot recover damages proximately caused by his own negligence. Our examination of the record convinces us that there was sufficient evidence to jus-

tify giving the instruction, construing the evidence in the strongest possible manner in support of the theory of the party asking for the instruction. Webb v. Hardin, 53 Ariz. 310, 316, 89 P.2d 30 (1939). The jury may well have inferred negligence on Gallagher's part from (1) his failure to test at the earliest opportunity in view of his confessed unfamiliarity with Asbestolite (2) testimony that common causes of leaks is a "fishmouth" and/or dirt or gravel in the pipe joints, (3) testimony that such conditions could be detected at the time of assembly by competent installers, (4) testimony that such conditions result from careless installation, (5) testimony as to inexperience of Gallagher's workmen and the hazards of using workmen with little training to assemble pipe. We find no error in submitting the question of defendants' negligence to the jury's consideration.

The court further instructed the jury:

"If you find that plaintiff sold and delivered goods and materials to defendant Gallagher in accordance with an agreement between the parties, you are instructed that Plaintiff may recover the unpaid price of such goods from defendant Gallagher."

Defendants' chief objection to this instruction was that it withdrew from the jury's consideration their theory that plaintiff's breach of contract and/or breach of implied warranty precluded its recovery of the unpaid balance due on the goods delivered. As we have previously pointed out, this theory is not the law in this state. The colloquy between the trial judge and counsel during settlement of instructions clearly indicates to us the trial court's concern and considered effort to keep the instructions from confusing the jury.

■■■ This court in reviewing instructions will not consider them in a piecemeal fashion but will consider them in their entirety, the test of their correctness being whether upon the whole charge the jury will gather the proper rules to be applied in arriving at a correct decision.

Newton v. Main, 96 Ariz. 319, 321, 395 P.2d 360 (1964); Musgrave v. Githens, 80 Ariz. 188, 193, 294 P.2d 674 (1956). As we read the above instruction in conjunction with the other instructions relative to defendants' right to recover damages in the event plaintiff failed to deliver the goods described or goods of merchantable quality, we hold that the jury was properly instructed as to the applicable law.

Additional error is assigned to the exclusion of evidence concerning certain damages allegedly sustained by Gallagher. Since all issues were resolved by the jury in Viking's favor, it is unnecessary for us to consider the merits of this contention.

For the reasons herein expressed, the judgment is affirmed.

KRUCKER, C. J., and JOHN P. COLLINS, Superior Court Judge, concurring.

NOTE: Judge John F. Molloy having requested that he be relieved from consideration of this matter, Judge John P. Collins was called to sit in his stead and participate in the determination of this decision.