417 P.2d 710

**KING REALTY, INC., and Earl R. King and Lillian R. King, husband and wife, Appellants and Cross-Appellees,**

v.

**GRANTWOOD CEMETERIES, INC., an Arizona Corporation, Appellee and Cross-Appellant.***

**No. 2 CA–CIV 2.**

Court of Appeals of Arizona.

Aug. 16, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7068. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Merchant, Parkman, Miller & Pitt, by J. Emery Barker, Tucson, for appellants and cross-appellees.

Goddard & Barry, by Harry Gin, Tucson, for appellee and cross-appellant.

ROBERT E. McGHEE, Superior Court Judge.

Appellants were plaintiffs in an action for an accounting, and defendant cross-claimed against the individual Plaintiffs, claiming damages because of alleged embezzlements and conversion of defendant's funds by plaintiff, Earl R. King. Appellants appeal from the denial of an accounting, and Defendant cross-appeals from the court's failure to include certain items of damage.

Plaintiff, Earl R. King, was a real estate broker in Tucson, conducting his business through King Realty, Inc., of which he was president. He was also one of the incorporators and president of Grantwood Cemeteries, Inc., a corporation organized to operate a cemetery and sell cemetery lots. In the pre-incorporation agreement it was provided that King was to handle the sale of the lots on a commission basis of 25% of the gross selling price. After the incorporation of King Realty, Inc., in late 1952, Grantwood Cemeteries, Inc., and King Realty, Inc. entered into a contract on the 10th day of February, 1953, granting King Realty, Inc. " * * * the exclusive right to handle the sale and transfer of said lots * * * " The contract had no definite term but was terminable by either party on giving ninety days written notice to the other. A few lots were sold, but it appeared that King was not properly trained to sell cemetery lots. On March 1, 1953, King

was incapacitated by an accident to such an extent that he did not go back to work until thirty or thirty-five days later. Thereafter, he did not attempt to carry out the contract, although he testified he could have.

On July 1, 1953, a special meeting of the Board of Directors of King Realty, Inc. was held. The minutes of the meeting read in part as follows:

"The purpose of such meeting was to notify all concerned *that King Realty, Inc. would have to waive its rights to exclusive sale of lots in Grantwood Memorial Park under the terms of its contract if a sales contract was negotiated with Sacred Gardens (Norman Anderson) for the sale of such lots for Grantwood.* All directors approved of such action and the meeting was adjourned." (emphasis added)

On July 13th a meeting of the Board of Directors of Grantwood Cemeteries, Inc. was held, and the minutes of the meeting show in part that:

"Methods of raising money were discussed, and two proposals were submitted by Randolph Jencks. King stated that three men would be in this week or next week in connection with position of sales manager. If a contract should be made with one of these gentlemen, it will be for one year with a mutual option for a second year, and the sales manager being responsible for the hiring and training of crews during the time of such contract existing. No sales expenses will be provided for with King Realty, Inc."

A contract was entered into with the Sacred Gardens Association on July 15, 1953, providing for a 40% commission on the gross sales price. The July 15th contract and minutes were unanimously approved at the next meeting of the Board on October 14, 1953.

At the trial the plaintiff offered in evidence the handwritten notes of the secretary of Grantwood Cemeteries, Inc. taken at the meeting of the Board of Directors held on July 13th. They were offered in an attempt to show that there was an agreement that the contract with King Realty, Inc. would remain suspended during the existence of the Sacred Garden Contract. The objection to the admission of the exhibit was sustained by the court on the grounds that the minutes of the meeting were the best evidence.

After the Sacred Garden contract had been in effect for about eight weeks, the Sacred Gardens Association ceased operations. King for some time thereafter continued the sale of lots through the salesmen left by Sacred Gardens, collected the 40% commission and paid salesmen as provided in the contract of July 15, 1953. King then undertook to secure from Sacred Gardens Association an assignment to King Realty, Inc. of their contract with Grantwood Cemeteries, Inc. On January 5, 1954, King, as president of King Realty, Inc., signed an acceptance of an assignment from Sacred Gardens of all of Sacred Garden's rights and interests in its contract with Grantwood. At the same time he signed a consent to the assignment as president of Grantwood. On January 7, 1954, the assignment was signed for Sacred Gardens and returned to King, but with provisions for the assignment of all earned but unpaid commissions to King Realty, Inc. struck out. The assignment was never formally accepted by Grantwood. Despite this, King paid over to King Realty, Inc. from Grantwood $582.25 owed by Grantwood to Sacred Gardens for commissions.

On July 14, 1954, there was a meeting of the Board of Directors approving a new contract with Midwest Memorial Gardens. The secretary testified that the King Realty, Inc. contract was discussed and that, "It is my recollection that the same type of report that I testified was made with reference to the Sacred Gardens." No mention of the report appeared in the minutes of the meeting.

As previously mentioned, a five year contract was entered into with Midwest Memorial Gardens in July, 1954. On October 15, 1956, King was voted out as

president of Grantwood and an audit of the corporation's accounts was ordered. On November 5, 1956, the Midwest contract was ended by a mutual cancellation with Grantwood agreeing to pay to Midwest the sum of $35,316.00, secured by a mortgage. King, on November 7, 1956, notified Grantwood that he was ready to resume the sale of the lots under the original contract between Grantwood and King Realty, Inc. Grantwood itself thereupon resumed the sale of lots. King Realty filed suit against Grantwood for an accounting of sales made by Grantwood between October 15, 1956, and October 15, 1957. Grantwood by counterclaim alleged that the corporate plaintiff, King Realty, Inc., was the *alter ego* of defendants Earl R. King and Lillian R. King, and that they had used the corporation to perpetrate fraud and that the defendant Earl R. King had embezzled, misappropriated and converted funds of the defendant. The court found for the defendant on the plaintiff's complaint, and for the defendant on the counterclaim in the sum of $17,988.04 with interest from the date of judgment.

The Court found that "a short time after" the execution of the February 10th, 1953 contract with King Realty, Inc. all of the parties to this action, with full knowledge and acquiescence, acted and dealt with the subject matter of the contract in a manner totally inconsistent with the existence of such a contract. There was a further finding that the contract was abandoned and rescinded by the parties "prior to October 15, 1957."

Plaintiffs claimed that the court erred by refusing to order an accounting based upon an exclusive sales contract and in not finding that the Board of Directors of Grantwood assented and acquiesced informally to a temporary suspension of the sales contract. Their argument is that it was understood that the sales contract with King Realty, Inc. would be held in abeyance during the existence of the Sacred Garden and Memorial Garden contracts. They argue that the court erred in not permitting oral evidence of the understanding among the directors and in not admitting the notes of the secretary taken at the board of directors meeting of July 13, 1953.

 The position of the defendant is that the plaintiffs and the defendants did not have an agreement that the contract would merely lie dormant during the terms of the Sacred Garden and Memorial Garden contracts, but had, in fact, acted in a manner inconsistent with the original agreement, and had thereby rescinded the contract. Appellants accept the proposition that on appeal the appellate court is bound by the findings of fact based upon conflicting evidence. Mollohan v. Christy, 80 Ariz. 141, 294 P.2d 375 (1956). However, they claim an inherent inconsistency in the finding that the contract was abandoned "prior to October 15, 1957," without a specific finding that it was rescinded prior to October 15, 1956. They reason that the inference is that the contract must have been in force for some part of that period. It must be noted that the Court also found that "a short time after" the execution of the contract all of the parties to the action, with full knowledge and acquiescence, acted and dealt with the subject matter of the contract in a manner totally inconsistent with the contract. We must also assume that the trial court found in addition to the facts expressly found, additional facts necessary to sustain the judgment, if they are reasonably supported by the evidence and not in conflict with the express findings. In re Adoption of Holman, 80 Ariz. 201, 295 P.2d 372 (1956); Lininger v. Desert Lodge, 63 Ariz. 239, 160 P.2d 761 (1945).

 We first look at the argument (not supported by a formal assignment of error or question for review) that the Court erred in not admitting into evidence the handwritten notes of the secretary on the directors meeting of July 13, 1953. Because of the nature of the evidence excluded, we do not deem it necessary in this case to pass upon defendant's contentions that there was no proper assignment of error as to the exclusion of such evidence and that the ex-

clusion was proper, in that the minutes of the July 13, 1953, meeting were clear and unambiguous.

We have examined the cryptic pencilled notes taken by the secretary and find no discrepancy between these notes and the formal written minutes prepared by the secretary of the meeting in question. In the notes we see: "3 coming in this and next week. Hire and train crews here. Salesman's license. 1 year contract plus one year option. No cut for E during contract." These notes support the minutes quoted above in this opinion. No portion of these notes appears to this court to be any support for the contention that the King Realty Agency contract was to come back to life after the Sacred Gardens Agency contract should expire. Under these circumstances, if there were error in refusing the admission of the secretary's notes, it could not have been prejudicial.

Plaintiffs' next claim that when the Memorial Gardens contract was approved there was another understanding that the King Realty, Inc. contract would merely lie dormant during its existence. Concerning this contract, the Secretary was permitted to testify that at the meeting of the Board approving the contract on July 19, 1954, it was his "recollection that the same type of report that I testified was made with reference to Sacred Gardens. No mention of the King Realty, Inc. contract was made in the minutes of the meeting. The Secretary further testified that at no time after the execution of the King Realty, Inc. contract was signed was there any discussion of its cancellation at any meeting he attended.

The minutes of the Board of Directors of November 3, 1956, show that Earl King seconded a motion for the continuation of negotiations to purchase back from Midwest Memorial Gardens the contract for the sale of lots. The vote was unanimous. On November 5, 1956, there was a unanimous vote to complete the contract for the termination of the agreement with Midwest Memorial Gardens, and the contract was executed. Earl R. King was present at the meeting. On November 7, 1956, Earl R. King notified Grantwood by letter that the original King Realty, Inc. contract became immediately effective upon the termination of the agreement with Midwest Memorial Gardens, and that it was necessary that King Realty, Inc. receive 25% on all sales. He also stated in the letter that:

"It is also urgent that a branch office of King Realty, Inc., be registered with the real estate commissioner without further delay. The cost of such branch office license is $5.00, and the cost of transferring the license of each salesman is $1.00. * * * We have the forms and the real estate commissioner has been notified of the recent office change, and therefore we do not deem it adviseable to put off recording this change any longer. Immediately upon receipt of your check for the $5.00 plus $1.00 for each salesman licensed, we will forward the recording to the commissioner.

It is unlawful for Grantwood to pay these salesmen."

It does not appear from the evidence that the members of the Board of Directors were aware at the time of the cancellation of the Midwest contract that King Realty, Inc. had a right to continue with the original contract. Nor does it appear that Earl King made any such claim when he seconded the motion and voted to terminate the contract with Midwest. There is no explanation in the evidence why King Realty, Inc. should request Grantwood to pay the cost of real estate licenses when the original agreement provided that the real estate commission of 25% was to include "promotional, office and other expenses" in connection with the sale of lots. The trial court may have considered this along with other conduct in making his findings as to the abandonment of the contract.

■ We feel that there was ample evidence from which the court could have found that prior to October 15, 1956, the parties acted and dealt with the subject matter of the contract in a totally inconsistent manner and that the contract was

abandoned prior to that time. Where the acts of one party inconsistent with the existence of a contract are acquiesced in by the other, the contract will be treated as abandoned. 17A C.J.S. Contracts § 389; Wiegardt v. Becken, 21 Wash.2d 59, 149 P.2d 929 (1944); Jensen v. Chandler, 77 Idaho 303, 291 P.2d 1116 (1956). If, in order to sustain the judgment, it is necessary for the trial court to have found that the contract was abandoned prior to October 15, 1956, the reviewing court must assume that the trial court did make such finding. Lininger v. Desert Lodge, 63 Ariz. 239, 160 P.2d 761; (1945) Leigh v. Loyd, 74 Ariz. 84, 244 P.2d 356 (1952). There are implied in every judgment findings of fact, in addition to express findings made by the court, which are necessary to sustain the judgment, if such additional findings are reasonably supported by the evidence and are not in conflict with express findings. In re Adoption of Holman, 80 Ariz. 201, 295 P.2d 372 (1956). We conclude, therefore, that since there was no agency contract in existence during the period of time for which an accounting was asked (Oct. 15, 1956 to Oct. 16, 1957) there was no right to an accounting and the court rightfully granted judgment for the defendant on plaintiffs' complaint.

The defendant in its cross appeal assigns as error the failure of the court to include in its judgment four different items. Following the filing of findings of fact and conclusions of law and the filing of the judgment on September 30, 1959, the defendant, Grantwood Cemeteries, Inc., filed on October 9, 1959, a motion to amend and supplement the findings of fact and conclusions of law and to amend the judgment, which motion was denied.

The first assignment of error concerned the failure of the court to include in the judgment on the counterclaim an additional sum of $900.00 for rent paid to the plaintiffs from the assets of Grantwood. The court found that:

"During the years 1953 and 1954, counter-defendant, Earl R. King, wrongfully,

and *without authority* from or consideration to the defendant, charged $1,800 rent for an office shared by the plaintiff, defendant and counter-defendants, said charges being against defendant; that the total rent paid by plaintiff and the counter-defendants for the property so shared was $900.00 for the same period; that the plaintiff made a profit of $900.00 on said transaction; *that the charge was made without the knowledge of the other directors and stockholders of the defendant."* (Emphasis added)

Defendants in appealing from the refusal of the court to grant the additional $900.00 on the claim for refund of rent also appeal from the refusal of the court to make the following additional findings;

"that plaintiff and counter-defendants have failed to show an agreement between them and defendant for the payment of any rental; that plaintiff and counter-defendants have to show the value of the premises occupied by the defendant."

Plaintiffs contend that the burden is on defendant to prove the unreasonableness of the rent. Grantwood's position is that King stood in a fiduciary relation to the corporation, that as such he was duty bound not to allow his private interest to conflict with the interest of Grantwood, and that he had the duty to prove the reasonableness of his transactions with the corporation.

At this point it should be mentioned that the court found that King Realty, Inc. was the *alter ego* of Earl R. King and his wife Lillian R. King, that they used the corporation to perpetrate injustice, and that King, as President of Grantwood, wrongfully paid to King Realty, Inc., or to himself and his wife, money of Grantwood for his own personal bills and for unauthorized salaries, totaling $17,988.64. The record of his conduct is rank with wrongdoing, and he has not appealed from the judgment on the counterclaim.

Plaintiffs argue that since the original findings of fact were prepared by counsel for defendant Grantwood it was bound

thereby and could not ask that they later be amended. Defendant has appealed from both the failure of the court to grant judgment on four items and from the failure of the court to make the requested findings. We find no merit in the contention that because the defendant's attorneys prepared the original findings of fact it is now bound by them, and plaintiffs have cited no authority for their contention.

Plaintiffs further contend that there is no showing that the additional items have been left out of the judgment. A simple matter of adding up the items set out in the findings of fact shows that they amounted to $17,988.04, the amount of the judgment on the counterclaim, and did not include the additional items. The only issue of merit is whether the court erred on the issue of the burden of proof.

 It is the law that any individual gain and profit that directors of a corporation make in connection with property entrusted to their care will be viewed with jealousy and their actions will be set aside on slight grounds. Further, the burden of proof is on the individual directors with respect to the fairness of the transactions they have with the corporation they represent. Alger v. Brighter Days Mining Corporation, 63 Ariz. 135, 160 P.2d 346 (1945), and cases therein cited. The question then remains whether there is any evidence upon which the trial court could have reasonably refused to grant judgment for the four additional requested items. Plaintiffs have failed to point out in their brief any evidence of the fairness of the rental charged and we have been unable to find any in the transcript of the testimony. The court found that there was no agreement to pay rent and King testified that he knew that Grantwood could not afford to pay rent. There being in the record no proof of the fairness of the rent charged, we conclude that the court erred in not granting judgment for the full $1,800.00 charged instead of only $900.00.

 The court refused to grant judgment to Grantwood for the sum of $750.00 for six lots King transferred to himself from Grantwood. King testified that with reference to giving any consideration for the lots: "I didn't pay in cash, not the full amount, I know that. I think maybe they might have been charged to my account but I am not positive on that." There was no showing that the sale was authorized by the stockholders or directors of Grantwood. The selling price of the lots was $125.00 each and there was no showing that the same had been paid other than the above. King has resold the lots. We feel that the proof of the fairness of the transaction fell short of that required by the law and that the purchase price of these lots should have been included in the judgment.

Likewise there was proof that King had transferred to King Realty, Inc. the sum of $582.25 owed by Grantwood as commissions to Sacred Gardens. The proof was clear that if Grantwood were to be sued for this sum by Sacred Gardens, judgment could be had against it. Also Grantwood claimed that it would have had a valid counterclaim against Sacred Gardens. Again we find no grounds upon which the court could have refused judgment to Grantwood on this item.

 The last assignment of error by Grantwood was the failure of the court to include interest on the monies wrongfully taken by plaintiffs from the time of the takings. Plaintiffs present no authority in opposition to the authorities cited by defendant and we will assume they have none other than the general propositions previously deemed to be without merit. The Arizona Supreme Court has previously held that the measure of damages for money wrongfully withheld is a sum equivalent to interest from the time of taking to the time of judgment at six percent (6%) simple interest. Rossi v. Hammons, 34 Ariz. 95, 268 P. 181. There is evidence in the record from which the date of takings can be ascertained. We find no reason in the evidence or in the law why interest should not have been allowed from the times of the unlawful takings by the plaintiffs.

The judgment is therefore affirmed on the appeal from the judgment denying an accounting, and reversed on the appeal from the judgment on the counterclaim refusing to grant judgment to Grantwood on the additional sums of $900.00, $750.00, $582.25, together with interest on the various sums wrongfully taken from the times of taking. The Superior Court of Pima County is directed to compute the interest and enter judgment accordingly.

HATHAWAY and MOLLOY, JJ., concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge ROBERT E. McGHEE was called to sit in his stead and participate in the determination of this decision.