540 P.2d 141

**Arthur L. WIPPMAN and Edith J. Wippman, husband and wife, Appellants,**

**v.**

**Thelma M. ROWE, an unmarried woman, and VY-73C Ranch Corporation, an Arizona Corporation, Appellees.**

**No. 2 CA-CIV 1804.**

Court of Appeals of Arizona, Division 2.

Sept. 18, 1975.

Rehearing Denied Oct. 22, 1975.

Review Denied Nov. 25, 1975.

Richard M. Davis, J. Emery Barker, Tucson, for appellants.

Messing, Franklin & Feulner, P. C. by George J. Feulner, Jr., Daniel J. Sammons, Tucson, for appellees.

## OPINION

KRUCKER, Judge.

Appellants, Arthur and Edith Wippman, brought this suit seeking specific performance of a contract for the sale of real property, or damages in the alternative. Appellees, Thelma Rowe and the VY–73C Ranch Corporation, counterclaimed for rescission. After a bench trial, the court made findings of fact and conclusions of law, holding for appellees on both the complaint and the counterclaim. From the judgment of the trial court, appellants appeal.

Appellants raise four issues on appeal. They first contend that the trial court's findings of fact and conclusions of law were erroneous in part. They further contend that specific performance or damages should have been granted because the suit was not barred by the Statute of Frauds, there was no mutual rescission, and the contract was otherwise valid and enforceable. They finally contend that the trial court erred in admitting into evidence a document prepared by appellants' attorney. We hold there was ample evidence from which the trial court could have concluded that the parties mutually rescinded their agreement and we therefore affirm.

The appellants were a married couple residing in Pima County. Appellee Thelma Rowe was the sole shareholder of appellee VY–73C Ranch Corp., which owned the 3C Ranch in Pima and Pinal counties. On September 2, 1971, Rowe listed the 80-acre headquarters portion of the ranch with Flintridge Development Corp., a realty brokerage firm. Harold Hite, the office manager of Flintridge, formed the Ro-Bren Development Co., another brokerage firm, in November, 1971.

On January 3, 1972, Lynn Adams of Ro-Bren procured from appellants a listing of the Ridgeway Apartments. In late January or early February, 1972, Adams told appellee Rowe that the Ridgeway Apartments were available and that appellants might be interested in trading them for some acreage property.

On February 12, 1972, Adams took appellants to the 3C Ranch. At that time appellants met appellee Rowe for the first time. Appellants inspected the headquar-

ters area of the property and some other portions as well.

On February 15, 1972, Ro-Bren prepared for appellants a written offer to purchase the 3C Ranch. The offer, which was directed to appellees, was written on a standard Deposit Receipt and Sales Agreement form. The offered price was $800,000.00 The subject matter of the offer was described as follows:

"Allthat (sic) real property and leased land and forest permits including but not limited to, described as the 3C Ranch on a description and fact sheet prepared by the Seller, incorporated herein for all purposes, which when finally closed will convey to the Buyers: 5,280 deeded acres, 19,200 acres of State of Arizona grazing lease and 11,500 acres of 7-month U.S. Forest permit, patented and unpatented mining claims, 11 apartments and furnishings, approximately 900 head of cattle with calves at side (which includes 58 registered cattle, mostly bulls), 30 head of horses (which includes the stallion and 6 registered quarter horses), all brands and earmarks, all cattle equipment and remnants and all subject to inventory to follow."

The personal property to be conveyed was described as "All contents of all buildings, including main house." The fact sheet mentioned in the description was prepared by appellee Rowe some five years before. It was attached to the Deposit Receipt and Sales Agreement form. The fact sheet described, *inter alia*, "EQUIPMENT: Exceptional for complete ranch operation."

When the offer contained in the Deposit Receipt and Sales Agreement was presented to Rowe, she rejected it.

On February 19, 1972, Ro-Bren attached an additional Deposit Receipt and Sales Agreement form to the two sheets comprising the February 15 offer. This form left blank the description of the property and offered $900,000 instead of $800,000.00. When Appellee Rowe was presented with the three documents that same day, she signed the new one, adding these words in her handwriting:

"Feb 19, '70

Buyer understands, he is buying As Is upon his inspection & approval. Also Royal Camper, Stadium Horse Trailer, and misc. personal effects are not a part of the purchase. Also payments on present mortgage are not to be escalated. Dude Fanning remain (sic) as cattle foreman or an approved cattle mgr. to maintain current cattle herd standards."

Appellants subsequently approved the handwritten changes.

At all times material to this appeal a D-8 Caterpillar tractor and an E-12 Caterpillar grader were physically located on the 3C Ranch and were used in operating it. These items of heavy equipment were transferred from appellee VY-73C Ranch Corp. to appellee Rowe before this controversy arose. On February 24, 1972, appellants and appellee Rowe conducted an inventory of the 3C Ranch. At that time Rowe told appellants the D-8 and the E-12 were her personal assets and were not included in the sale. The appellants asserted the contract conveyed the D-8 and the E-12 along with everything else.

The parties met the next day in the office of J. Emery Barker, appellants' attorney. Lynn Adams of Ro-Bren and appellee Rowe's secretary, Linda Thompson, were also present. Appellant Arthur Wippman brought up the subject of the D-8 and E-12 at the start, asking Rowe if they were part of the transaction. Rowe replied they were not and stated the sale was to encompass only certain assets of the VY-73C Ranch Corporation. Wippman asserted that the D-8 and the E-12 were assets of the corporation because they were on the corporation's depreciation schedule. Rowe denied this and telephoned her accountant. She handed the receiver to Barker, who, after conversing with the accountant, turned to Wippman and said, "She's right, they are not part of the corporate assets." After a pause, Wippman

looked at his copy of the agreement of February 19 and said, "Then I cannot deal." Rowe said, "You mean to tell me this is not a deal?" Wippman replied, "That's right, I'll not deal." Rowe asked Barker if he understood and Barker indicated that he did. Rowe then turned to Lynn Adams of Ro-Bren and said, "Do you understand that? He said this is not a deal. He cannot deal. We don't want to have any trouble with any real estate commissions or anything. Just so we all understand." Adams shrugged and said, "No deal, no commission." Rowe then produced a single typed sheet and handed it to appellants, indicating that she would consider a new deal based on the proposals contained therein. Rowe and Thompson then left.

■ The trial court held in its eleventh Conclusion of Law that the agreement of February 19, 1972, was rescinded by the parties on February 25, 1972. We think this conclusion was correct. 5A Corbin on Contracts Sec. 1236 states:

" . . . rescission means a mutual agreement by the parties to an existing contract to discharge and terminate their duties under it. Just as in the case of the formation of a contract, so also in the case of its rescission there are expressions of assent by both parties— usually in the form of an offer by one and an acceptance by the other. The legal effect of a rescission as thus defined is the discharge of all rights and duties on the part of both parties with respect to the contract that has been rescinded." 5A Corbin on Contracts at 533.

*See, Martinson v. Publishers Forest Products Co.,* 11 Wash.App. 42, 521 P.2d 233 (1974); Restatement of Contracts Sec. 406, comment b. As in any contract, the subjective intent of the parties to a contract of rescission is immaterial. A mutual rescission is effected, if at all, on the basis of the parties' objective manifestations of assent. *In re Estate of Lyman,* 7 Wash. App. 945, 503 P.2d 1127 (1972), *adopted,* 82 Wash.2d 693, 512 P.2d 1093 (1973).

■ The Arizona courts follow the doctrine of mutual rescission and often refer to it as "abandonment." *See, Diamos v. Hirsch,* 91 Ariz. 304, 372 P.2d 76 (1962). In *Kolberg v. McKean's Model Laundry & Dry Cleaning Co.,* 9 Ariz.App. 549, 454 P. 2d 867 (1969), Division One of this court stated:

"Abandonment is a matter of intention to be ascertained from the facts and circumstances which surround the transaction from which abandonment is claimed. . . . Whether there has been an abandonment is a question of fact and what constitutes an abandonment is a question of law." 9 Ariz.App. at 550, 454 P.2d at 868.

*Accord, Cords v. Window Rock School Dist. No. 8, Apache County,* 22 Ariz.App. 233, 526 P.2d 757 (1974); *King Realty, Inc. v. Grantwood Cemeteries, Inc.,* 4 Ariz.App. 76, 417 P.2d 710 (1966). A parol agreement to abandon a prior written agreement is valid. *Dover Copper Mining Co. v. Doenges,* 40 Ariz. 349, 12 P.2d 288 (1932); *Pleasant v. Arizona Storage and Dist. Co.,* 34 Ariz. 68, 267 P. 794 (1928); 5A Corbin on Contracts Sec. 1236, at 541.

■ We may infer from any judgment the findings necessary to sustain it if such additional findings do not conflict with express findings and are reasonably supported by the evidence. *Thermo-Kinetic Corp. v. Allen,* 16 Ariz.App. 341, 493 P. 2d 508 (1972); *King Realty, Inc. v. Grantwood Cemeteries, Inc.,* supra. In this case we may infer from the trial court's eleventh Conclusion of Law a finding that at the meeting of February 25, 1972 appellants and appellee Rowe each manifested the objective intent to abandon or rescind the written agreement of February 19, 1972. From our reading of the record we cannot say this finding is clearly erroneous. When his lawyer told him the D–8 and the E–12 were in fact not corporate assets, appellant Arthur Wippman said, "Then I cannot deal." He repeated this in response to appellee Rowe's question. The trial court could reasonably have found

that Wippman's words manifested an intent to rescind the agreement of February 19. The trial court could also have found that Rowe viewed Wippman's words as an offer to rescind and that her statements to Wippman, Barker and Adams manifested an intent to accept it. The trial court correctly held that appellants and appellee mutually rescinded the February 19 agreement on February 25.

■ Appellants also contend that appellees' Exhibit H, consisting of an Amended Purchase Agreement prepared by appellants' attorneys, constituted an offer of settlement and was hence improperly admitted into evidence. In support of their contention appellants note that Exhibit H recites:

> "There are some disputes and contested matters between the parties . . . ."

and

> "The parties by executing this agreement intend to resolve all disputes . . . ."

The rule at common law and in Arizona is that offers of settlement are inadmissible as a matter of public policy. Udall, Arizona Law of Evidence § 97. We think that Exhibit H was not an offer of settlement within the general rule of exclusion. As the court stated in *Gallager v. Viking Supply Corp.,* 3 Ariz.App. 55, 411 P.2d 814 (1966):

> "The determining factor is the form of the statement, whether it is explicit and absolute. If its purpose is to declare a fact really to exist, rather than to concede a fact hypothetically in order to effect a settlement, the statement is admissible." 3 Ariz.App. at 60, 411 P.2d at 819.

The recitals in Exhibit H were not framed as hypotheticals; they simply stated facts of which the parties were aware. Exhibit H was hence not excludable as an offer of settlement.

Appellants contend that certain of the trial court's findings of fact are incorrect. We have examined the record and find that all the trial court's findings are supported by substantial evidence. Since none of the findings are clearly erroneous, we are bound to accept them. *Olson v. State,* 12 Ariz.App. 105, 467 P.2d 945 (1970).

Appellee requests us to assess a $500 penalty against appellants pursuant to A.R.S. Sec. 12–2106. That section provides:

> "When the supreme court is of the opinion that an appeal has been taken for delay, and that there was not sufficient grounds for taking an appeal, it may include in its judgment an additional amount, not exceeding ten per cent of the judgment appealed from, if the judgment is for the recovery of money, and not exceeding five hundred dollars in other cases, as damages for a frivolous appeal."

It appears to us that appellants took this appeal in good faith and not for delay. Appellees' request is therefore denied.

Because of the view we take of this case, we need not discuss the other issues raised by appellants.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.